# Taylor *v.* Forsey.

*Bill in Equity for Account of Annuity Charged on Land, and Declaration of Charge.*

1. *What is open account.*—A claim for an annuity of a sum certain, created by deed, charged on lands, and payable annually during the life of the annuitant, is not an open account within the statute of limitations of three years (Rev. Code, § 2904).

2. *Statute of limitations; exception in favor of lunatics.*—A person who is a lunatic, or *non compos mentis,* is excepted from the operation of the statute of limitations (Rev. Code, § 2910) so long as the disability continues, but not exceeding twenty years.

3. *When purchaser is chargeable with notice of incumbrance on land.*—A purchaser of land is chargeable with notice of all facts recited in the deed to his vendor, or in a former deed to which it refers, and which is a necessary link in the chain of title.

4. *Charge of annuity on real and personal property, by deed.*—When an annuity is charged on real and personal property, conveyed by deed of gift, the acceptance of the deed binds the grantee to the payment of the charge; and neither he, nor a purchaser from him with notice, can claim a partial exoneration of the land, on account of a subsequent loss or destruction of the personal property, as, for instance, the emancipation of the slaves by the late war.

5. *Same; construction of deed, as to right of annuitant to claim dower in lieu of annuity.*—A deed of gift, by which lands were conveyed to the grantor's daughters, charged with the payment of an annuity to his wife, contained the following provisions : "But said annuity is hereby expressly declared to be charged upon the said lands, in lieu of the dower interest therein to which the said Susan" [grantor's wife] "would be entitled, should she survive him," the grantor : "and it is hereby expressly declared, that if the said Susan, after the death of the said" grantor, "claim dower in the said lands, or any of them, then the said Mary and Martha," the grantees, "and the lands to them respectively conveyed by this indenture, are hereby released and discharged from the payment of the said annuity, or any part thereof ; but, should the said Susan accept the said annuity, in lieu of the dower interest she may have in the said lands, then the same is to be borne equally by the said" grantees: *Held,* that it was not incumbent on the annuitant, when seeking to enforce the charge on the lands, to show that she had elected to take the annuity in lieu of dower in the lands; that the deed vested in her an absolute right to the

annuity, subject to be defeated by her claiming dower, and this was matter o
defense.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed by Mrs. Susan E. Forsey, a
lunatic, who sued by her guardian, E. A. O'Neal, Jr., against
Morris K. Taylor, John M. Humphrey, James A. Boyd, and
Martha D. Boyd, his wife; and sought an account of an
annuity in favor of the complainant, and to have it declared
and enforced as a charge on certain lands, which said Boyd
and wife had sold and conveyed to said Humphrey, who sold
and conveyed to said Taylor. The bill was filed on the 5th
August, 1872; and the original having been lost after the
rendition of the chancellor's decree, a copy of it was substi-
tuted, by consent, on the 8th December, 1875. The annuity
sought to be enforced was created by a deed, executed by
Richard Forsey, the husband of the complainant, which was
made an exhibit to the bill, and the material provisions of
which were as follows:

"This indenture, made this 20th day of May, A. D. 1852,
between Richard Forsey, of the first part, James A. Boyd, of
the second part, Mary D. Boyd, wife of the said James A.
Boyd and daughter of the said Richard Forsey, of the third
part, and Martha W. Forsey, also daughter of the said Rich-
ard Forsey, of the fourth part, all of the county of Madison,
State of Alabama, *witnesseth*: That the said Richard Forsey,
for and in consideration of his love and affection for his said
daughter, Martha W. Forsey, and in satisfaction and dis-
charge of his liability to her for the payment of a legacy
which he has received heretofore as her guardian, from the
executor of the last will and testament of her grandfather,
Thomas Stewart, deceased, as well as for other considera-
tions hereafter set forth, he, the said Richard Forsey, has
given, granted, bargained sold, aliened, enfeoffed, and con-
veyed, and by these presents doth give, grant, bargain, sell,
alien, enfeoff, and convey, unto the said Martha W. Forsey,
the following tracts or parcels of land," particularly describ-
ing them; "to have and to hold the said tracts or parcels of
land, together with all the tenements, hereditaments, and
appurtenances thereunto belonging, or in any wise appertain-
ing, unto her, the said Martha W. Forsey, her heirs, and
assigns, forever; subject, nevertheless, to the charges and
provisions hereinafter set forth and expressed. And the
said Richard Forsey doth covenant," &c., inserting a cove-
nant of warranty against persons claiming under himself
only. "And this indenture further witnesseth, that the said
Richard Forsey, for and in consideration of his love and

affection for his said daughter, Mary D. Boyd, and of the undertaking of the said James A. Boyd hereinafter set forth, hath given, granted, bargained, sold, aliened, enfeoffed, and conveyed, and by these presents doth give, grant, bargain, sell, alien, enfeoff, and convey, unto the said Mary D. Boyd those certain other tracts or parcels of land," describing them; "to have and to hold the said tracts or parcels of land, to the said Mary D. Boyd, her heirs, and assigns, forever; subject, nevertheless, to the charges, incumbrances, and provisions hereinafter expressed. And the said Richard Forsey doth covenant," &c., as before. "And this indenture further witnesseth, that the said Richard Forsey, for and in consideration of his love and affection for his said daughters, as well as the considerations hereinafter set forth and expressed, hath given, granted," &c., "the following negro slaves, now owned and possessed by the said Richard Forsey," naming and describing them; "also, the crop now planted and growing on the plantation comprising the lands hereinbefore conveyed, and all the horses, mules, hogs, oxen, cows, and other cattle, carriage, wagons, farming utensils of every description, household and kitchen furniture, corn, fodder, bacon, and all other personal property of every kind and description which the said Richard Forsey now owns, except his money; to have and to hold the same, subject to the charges, incumbrances, stipulations, and provisions hereinafter set forth and expressed.

"And this indenture further witnesseth, that all the property, real and personal, hereby conveyed, is by this indenture charged and incumbered with the payment of all the just debts of the said Richard Forsey, contracted and owing by him before the execution of this indenture; also, with the payment to the said Richard Forsey of an annuity of seven hundred dollars, for and during his natural life, to be paid to him, or his order, on the first day of June, in each, and every year of his life after the present year, or so soon thereafter as the same shall be demanded; and to secure the payment of the said debts, and the proper management of the property, real and personal, hereby conveyed, until the said Martha W. Forsey shall arrive at the age of twenty-one years, or marry, and the debts of the said Richard Forsey shall be paid, it is understood and agreed upon, by and between the parties to this indenture, and is hereby provided, that all the property, real or personal, conveyed, or intended to be conveyed by this indenture, shall, upon the delivery of this indenture, pass into the possession of the said James A. Boyd, as trustee of his said wife, and as agent and next friend of the said Martha W. Forsey, and shall continue and remain

under his management and control, until, out of the profits thereof, all of the just debts now owing by the said Richard Forsey shall have been paid off and discharged, and until the said Martha W. Forsey shall marry, or arrive at full age; and that out of the rents and profits of the said estate hereby conveyed, the said James A. Boyd, as trustee and agent as aforesaid, shall pay to the said Richard Forsey the said annuity of seven hundred dollars, for each and every year, until the debts of the said Richard Forsey heretofore contracted by him shall be paid off and discharged, and until the said Martha W. Forsey shall arrive at full age, or marry. And it is further understood and agreed upon, and assented to by the parties hereto, and by this indenture it is provided, that upon the said Martha W. Forsey arriving at the age of twenty-one years, or upon her marriage before attaining that age, and after the payment of the said debts of the said Richard Forsey, by the said James A. Boyd, out of the rents and profits of said estate hereby conveyed, all the personal property hereby conveyed, and the increase thereof, as well as the rents and profits thereof, and the rents and profits of said lands which shall not have been required to pay the said debts and annuity, shall be equally divided between the said Mary D. Boyd and Martha W. Forsey, share and share alike.

"And it is further expressly agreed upon and understood, by and between the parties hereto, and provided by these presents, that until the division above provided for shall be had, this indenture shall have all the force and effect of, and be operative as a mortgage, upon all the property, real and personal, thereby conveyed, so far as to secure the payment of the aforesaid annuity to the said Richard Forsey; and that if, upon said division, there should be any portion of said annuity in arrears, then the personal property which, upon said division, shall be allotted to the said Martha W. Forsey, and the real estate hereby conveyed to her, shall be charged with one half of such arrears; and the lands hereby conveyed to the said Mary D. Boyd, and the personal property allotted to her on such division, shall be charged with the other half of such arrears. And it is further provided by this indenture, and it is agreed upon, assented, and well understood by the parties hereto, that after the division of the personal property hereby conveyed, as hereinbefore provided for, the lands conveyed by this indenture to the said Mary D. Boyd, and the personal property which shall be allotted to her on such division, shall be and stand and remain charged and incumbered with the payment to the said Richard Forsey of one half of the aforesaid annuity of

[Taylor v. Forsey.]

seven hundred dollars, which is to be paid to him on the first day of June in each and every year of his life, or so soon thereafter as he shall demand the same, but not after his death; but that the said Boyd and his wife may discharge said property from such incumbrance, by executing a mortgage to the said Richard Forsey, which may be satisfactory to, and accepted by him, in lieu of the incumbrance hereby created.

"And it is further well understood and agreed upon, by and between the parties to this indenture, that, after the said division, the real estate hereinbefore conveyed to the said Martha W. Forsey, and all the personal property which shall be allotted to her on such division, shall be and stand and remain charged with the payment to the said Richard Forsey of one half of the aforesaid annuity of seven hundred dollars, which is to be paid to him, or to his order, on the first day of June, in each and every year during his life, but not after his death; but the charge and incumbrance hereby created may be discharged, by the said Martha executing, and the said Richard accepting, another mortgage in lieu thereof, for the security of the payment of said half of said annuity.

"And this indenture further witnesseth, that the said Richard Forsey, by this indenture, charges the lands hereby conveyed to the said Mary D. Boyd, and the lands conveyed to the said Martha W. Forsey, with the payment of an annuity of three hundred dollars, to commence after the death of the said Richard Forsey, and to be paid during the life-time of Susan E. Forsey, wife of the said Richard Forsey, on the first day of June, in each and every year after the death of the said Richard Forsey, and during the natural life of said Susan E. Forsey, to her, or to her agent or attorney legally authorized to receive the same, or so soon after the said first day of June as the same shall be demanded; one half of which last named annuity is hereby charged on the lands hereby conveyed to the said Martha W. Forsey, and the other half thereof on the lands hereby conveyed to the said Mary D. Boyd; but said last mentioned annuity is hereby expressly declared to be charged upon the said lands, in lieu of the dower interest therein to which the said Susan E. Forsey would be entitled, should she survive the said Richard Forsey.

"And this indenture witnesseth, and it is hereby expressly declared, that if the said Susan E. Forsey should, after the death of the said Richard Forsey, claim dower in said lands, or any part thereof, then, in that event, the said Mary D. Boyd and Martha W. Forsey, and the lands to them res-

[Taylor v. Forsey.]

pectively conveyed by this indenture, are hereby released and discharged from the payment of the said annuity, or any part thereof, to the said Susan E. Forsey; but, should she accept the said annuity, in lieu of the ˙dower interest she may have in the said lands, then the same is to be borne equally by the said Mary and Martha, and paid at the time and in the manner hereinbefore provided for; and the payment of said annuity is here again expressly declared to be charged on the said lands, and in the proportion aforesaid. And the said James A. Boyd doth hereby covenant and agree with the said Richard Forsey and the said Martha W. Forsey, that he will immediately take possession of the lands and other property by this indenture conveyed, use and employ the same in a husbandlike manner, and hold and dispose of the property thereof in the manner hereinbefore directed and provided for by this indenture. In witness whereof," &c.

This deed was signed by said Richard Forsey, James A. Boyd, Mary D. Boyd, and Martha W. Forsey, and was attested by three subscribing witnesses; and it was admitted to record in the Probate Court of Madison, on the certificate of probate by the judge of said court, that on the 29th May, 1852, one of the subscribing witnesses appeared before him, and, "being first duly sworn, deposeth and saith, that he saw the within named Richard Forsey, Mary D. Boyd, and Martha W. Forsey sign, seal, and deliver the within deed to James A. Boyd, on the day and year therein mentioned; that he saw the said deed(?) that this deponent subscribed his name as a witness in the presence of the said above named parties, and also in the presence of J. D. Battle and J. M. Wright, the other subscribing witnesses, all on the day and year therein mentioned."

Richard Forsey died in April, 1856. On the 30th March, 1870, the complainant was declared a lunatic by the Probate Court of Madison, on the verdict of a jury rendered in proceedings regularly had in said court; and said E. A. O'Neal, Jr., was appointed her guardian. On the 16th December, 1853, said James A. Boyd and his wife sold and conveyed the lands which she took under said deed, to John M. Humphrey, one of the defendants; and on the 11th February, 1867, said Humphrey sold and conveyed them to his codefendant, Morris K. Taylor, who was in possession when the bill was filed. The deed of Boyd and wife to Humphrey described the lands as "containing three hundred and twenty acres, which was conveyed to said Mary D. Boyd by Richard Forsey, by a certain deed bearing date May 20, 1852, and recorded in the office of the judge of probate of said county, in Deed Book Y."

[Taylor v. Forsey.]

An answer to the bill was filed by Morris K. Taylor only, which, by consent, was taken as the answer of the other defendants. He denied all knowledge of the deed under which the annuity was claimed, required strict proof of its execution, and claimed to be a purchaser for valuable consideration without notice. He insisted that the annuity, if the deed was in fact executed, and was valid, was made chargeable on the personalty as well as on the lands, and the negroes having been emancipated by the late war, that the lands should be proportionally exonerated from the charge; also, that O'Neal's appointment was void, because there was a former appointment of a guardian, which was unrevoked. He claimed that, in stating the account, credits should be allowed for all payments made to such former guardian; and he pleaded the statute of limitations of three years, as a bar to that portion of the annuity which had accrued more than three years before the filing of the bill. He further insisted, that the complainant could not assert any claim to the annuity under the deed, without showing that all the debts of the grantor had been paid, and that she had accepted the annuity in lieu of dower; and he demurred to the bill for the want of these averments, and because it showed that the complainant was incapable of making an election, and on account of the staleness of the demand.

Several witnesses, whose depositions were taken on the part of the complainant, testified that she was of unsound mind when the deed of gift was executed by Richard Forsey, and was confined in a lunatic asylum the greater part of the time, from 1857-8 up to the filing of the bill. On the part of the defendants, the deposition of said Morris K. Taylor only was taken, who testified that he had no actual notice of the deed under which the annuity was claimed, until a short time before the bill was filed; but he admitted, in answer to cross interrogatories, that the deed of Boyd and wife to Humphrey was acknowledged before him, as the acknowledgment showed, in his official capacity as a justice of the peace; and that the description of the land, in his deed from Humphrey, was taken by him from the deed of Boyd and wife to Humphrey, though it did not contain the words above quoted as part of the description in Humphrey's deed.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, delivering the following opinion in support of his decree:

H. C. SPEAKE.—"In the investigation of his case, under the pleadings and proof, the following questions arose: 1. Whether or not the annuity is a charge alone upon the real

estate conveyed by the deed in the bill described to the said Mary. D. Boyd, or is the charge to be visited also upon the personal property in said deed described as being conveyed to said Mary D. Boyd. 2. Whether or not, the deed stating that the said annuity was to be and was intended in lieu of the said Susan's dower in said lands, she should make her election before filing her bill for the enforcement of the annuity; and whether or not she, being a lunatic, could make such election. 3. Whether or not the deed was so proved and acknowledged, as to give notice to all parties of its contents; and whether Humphrey and Taylor were *bona fide* purchasers of the land without notice of the incumbrance. 4. Whether any part of the annuity is barred by the statute of limitations of three years.

"1. The words of the deed that makes the conveyance to the said Mary D. Boyd are as follows," quoting the words as above set out. "The charges, incumbrances, and provisions are, the payment of an annuity of seven hundred dollars, to be paid on the 1st June in each and every year during the life of said Richard Forsey; and this annuity is a charge upon all the property conveyed, both real and personal. The same property was also incumbered with the payment of the debts which the said Richard Forsey then owed. But the terms of the deed, so far as the payment of the annuity of Mr. Forsey is concerned, are as follows," quoting the language of the deed. "A mere casual reading of the instrument, it seems to me, will convince any one, that it was clearly the intention of the grantor, Richard Forsey, that so far as the payment of his debts, and the payment of the annuity to himself, are concerned, they should be a charge upon all the property, both real and personal, that was conveyed; but, as to the annuity to his wife, the said Susan, the charge was upon the lands alone that were conveyed to the said Martha and the said Mary. The words of the deed clearly show that this is the only construction that can be placed upon it. Even if it were doubtful, the fact that Boyd and M. W. Forsey took the property under the deed, both personal and real, shows that they accepted it with the burden upon it; and if the personal property were lost, it would be their loss, not the loss of the annuitant. They took the property, and, by doing so, agreed to pay the charges, unless the said Susan should claim dower; and this is the only condition by which they can get rid of paying it. The slaves being freed, even admitting that the charges were upon them as well as upon the land, would be their loss, and the annuitant can look to the land for the satisfaction of her annuity. *Brooks v. Watson*, at January term, 1872.

[Taylor v. Forsey.]

"2. The deed further provides," quoting the language of the deed as above copied. "From the briefs of counsel on both sides it would appear, that they each entertain the opinion, that the clauses of the deed above quoted bring about such a state of things as to compel the said Susan E. Forsey to elect, whether she would take the annuity, or dower in the lands. I do not think this the proper construction to place upon the clause. The true construction of the clause, as I conceive, is to vest in the said Susan E. Forsey the right to the annuity therein given her, subject to be defeated by her choosing dower in the lands that are charged with its payment; and until she does claim dower in the lands, her right to the annuity is absolute. True, the annuity would be defeated by her claiming dower; but this, as I conceive, is wholly a matter of defense; and it devolves upon the defendants to show that she has claimed dower, to defeat her claim for the annuity. The presumption is, that the annuity is vested, and that she takes it, until the defense shows that the annuity has been defeated by her claiming dower. Hence I hold, that there is no necessity for the complainant to show that she accepts the annuity. Even were it required, the pleadings and proof show that she was insane when the deed was made, and has been so continuously from that time until the present. The answer further alleges, that the complainant has had another guardian than O'Neal, and that payments have been made by said Boyd and wife on said annuity; and this being so, they are estopped from saying there was no annuity.

"3. Are the defendants, Humphrey and Taylor, *bona fide* purchasers, without notice of the incumbrance? There can be no doubt that, as between the parties thereto, this is a good deed; and now the question is, whether the acknowledgment thereto, and the registration under such acknowledgment, are sufficient to give notice to all subsequent purchasers of the contents of said deed. There can not be any doubt as to the defect of the probate made by the witness McCreary before Judge Otey, according to the law that was in force at the time of the execution of this conveyance. The probate is defective in substance, in not stating that said witness saw the other subscribing witnesses sign the same in the presence of the said Richard Forsey, and in the presence of each other.—Aikin's Digest, 89, § 9. Had the law thus continued, there can be no doubt that, under the decision in the case of *McCaskle v. Amarine* (12 Ala. 17), such defective probate was not sufficient to authorize registration; and if such registration was made on such probate, it would not have operated as notice. By the Code, which was

[Taylor v. Forsey.]

adopted January 17, 1853, the law in regard to notice was changed. Humphrey purchased the lands on the 16th December, 1853; and the law applicable to notice at that time is the law of the case. By section 1274 of the Code of 1852 (Rev. Code, § 1543), the record of a conveyance operates as notice, without proof or acknowledgment. I shall hold, that the record in this case was notice to both Humphrey and Taylor. Even if there was no record, the facts and recitals of the deeds themselves, made exhibits to the bill and answer, are sufficient notice of the incumbrances on the land.— 34 Ala. 288; 18 Ala. 741; 42 Ala. 616. Now, when Humphrey purchased the land from Boyd and wife, the only evidence of title Mrs. Boyd had to the land was the deed from Richard Forsey to her, which charged the annuity on the land; and Humphrey must have known this, because the deed he gets from Boyd and wife shows, in its recitals, how they became invested with the title; stating who made the deed to them, the date of the deed, the county, and office in which, and the very book in the office in which said deed was recorded. The same applies to Taylor: the deed from Boyd and wife to Humphrey is a link in his title to the land. He was certainly bound to know, from the inspection of this link in his title, that the land conveyed to him was derived from Richard Forsey by Mary D. Boyd; and it was certainly enough to put him upon inquiry.—34 Ala. 288; 13 Ala. 50; 22 Ala. 743.

"4. As to the statute of limitations : The bill alleges, and the proof shows, that the complainant was a lunatic at the time of the execution of the deed, and has so continued to the time of the filing of the bill. Statutes of limitation will not avail, against infants, married women, or persons who are insane.—Rev. Code, § 2910.

"Hence I conclude, that the annuity is a charge alone upon the lands conveyed by the deed; that the annuitant is entitled to it as a vested right, unless she has defeated it by claiming dower in the lands; that Humphrey and Taylor are not *bona fide* purchasers for valuable consideration without notice, and that no part of said annuity is barred by the statute of limitations."

The appeal is sued out by Taylor. There is no assignment of errors on the record.

JOHN D. BRANDON, with whom were WALKER & SHELBY, for the appellant.—1. The annuity is given to Mrs. Forsey in lieu of her dower in the land, and the deed contemplates that she shall accept or dissent from its provisions. It presents a case of inconsistent rights, requiring an election between

[Taylor v. Forsey.]

the two. In the analogous case of an election between dower and a provision by will, it has always been held to be a personal right, which can only be exercised by the party herself.—2 Scribner on Dower, 469, § 2; *Shernon v. Newton,* 6 Gray, 307; *Boone v. Boone,* 3 Har. & McH. 95; *Hinton v. Hinton,* 6 Ired. Law, 274; *Collins v. Carman,* 5 Md. 503; *Welch v. Anderson,* 28 Mo. 293. The incapacity of the widow to elect, by reason of insanity, furnishes no cause for a relaxation of the rule.—*Lewis v. Lewis,* 7 Ired. Law, 72, and authorities above cited. The bill alleges, and the proof shows, that Mrs. Forsey was insane when the deed was executed, and has continued so ever since; consequently, she is, and has always been, incapable of making an election. As no time is specified, within which the election is required to be made, it must be made within a reasonable time; and what is a reasonable time must be determined by the court, from a consideration of all the facts and circumstances of the particular case. Here, the claim preferred by the bill is asserted after the lapse of about eighteen years, and against an innocent purchaser who has paid full value for the land; and no reason for the delay is shown, since the same incapacity on the part of the complainant has always existed. As to the application of the doctrine of a reasonable time, see *Sylvester v. Crapo,* 15 Pick. 92; 13 Mass. 131; 2 Mason, 241; 3 Watts, 339; 10 Wendell, 304; 13 Wendell, 549; 6 Wendell, 369; 1 Hall, 56; *Brown v. Turner,* 11 Ala. 752; *Branch Bank v. Gaffney,* 9 Ala. 153; 7 Porter, 175; *Reaves v. Garrett,* 34 Ala. 558. As to election between inconsistent rights, see, also, *Dillon v. Parker,* 1 Swanst. 359, note; 2 Story's Equity, § 1075; *Hilliard v. Binford,* 10 Ala. 977; *Vaughn v. Vaughn,* 30 Ala. 329; *Adams v. Adams,* 39 Ala. 274.

2. The deed charges all the property conveyed with the payment of the grantor's debts; and there is neither allegation nor proof that this prior incumbrance has been discharged. It can not be said that payment of the debts will be presumed; for, even if the debt is discharged by presumption of law, the mortgage security will not be presumed to be satisfied, until after the lapse of twenty years.—*Relfe v. Relfe,* 34 Ala. 500. Deducting the four years of the war, twenty years had not elapsed when the bill was filed.

3. It was clearly the intention of the grantor that the slaves should be charged with the payment of the annuity; and they having been emancipated, and thus lost without fault on the part of the grantees, the land should be exonerated.

4. The annuity is nothing more than an open account, accruing and demandable each successive year; and the

[Taylor v. Forsey.]

entire claim* is barred by the statute of limitations of three years, except as to the last three years before the bill was filed.

5. But, whatever may be the construction and operation of the deed, it can have no effect as against Taylor, who is an innocent purchaser for valuable consideration without notice. There is no pretense that he had actual notice of the contents of the deed, and the effort to charge him with constructive notice can not be sustained. The certificate of probate was substantially defective, and did not authorize the registration of the deed; and such unauthorized registration does not amount to constructive notice.—*McCaskle v. Amarine*, 12 Ala. 17; *Boykin v. Rains*, 28 Ala. 332; *Gimon v. Davis*, 36 Ala. 589; *Ohio Life Insurance Co. v. Ledyard*, 8 Ala. 866. Moreover, the certificate was absolutely void, because the probate judge had no authority to take the probate. Nor can Taylor be charged with constructive notice, on account of the recitals in the deed from Boyd and wife to Humphrey. Those recitals are not sufficient to charge a purchaser with notice of the deed from Forsey to Boyd: they describe another and a different deed, which could not have been found by a reference to the records. A purchaser is not bound to examine records beyond the title of his immediate vendor.—16 Mass. 418; 14 Mass. 302; 7 Watts, 382.

6. The bill seeks to enforce a stale demand, and states no facts sufficient to excuse the long delay in asserting it.— 2 Story's Equity, § 1097; 5 Ala. 90; *Johnson v. Toulmin*, 18 Ala. 50; *Kern v. Burnham*, 28 Ala. 428; *Askew v. Hooper*, 28 Ala. 634; 9 Ala. 662.

ROBINSON & O'NEAL, *contra* —1. As to the construction of the deed from Richard Forsey to Boyd, the opinion of the chancellor is relied on as unanswerable. On the question of election, and the exercise of that right by persons who are under a disability, such as infancy, lunacy, &c., see 2 Story's Equity, §§ 1080 *a*, 1097; *Gerald v. Bunkley*, 17 Ala. 170; *Bush v. Cunningham*, 37 Ala. 68; *High v. Worley*, 33 Ala. 196; 1 Brickell's Digest, 660–61, §§ 301, 306; *Fletcher v. Ashbury*, 1 White & Tudor's Lead. Cases in Equity, 560; *Kennedy v. Johnson*, 65 Penn. St. 450–54; *Cauffman v. Cauffman*, 17 S. & R. 24; 2 Vesey, 560, 696; Roper on H. & W. 571.

2. A purchaser has constructive notice of everything that appears on the face of his deed, and of every other deed which is a necessary link in the chain of his title. He has the right to call for all the title papers, and it is his duty to read them; nor can he be heard to say that he did not read them.—2 Lead. Cases in Eq. 153–63; *Wilson v. Wall*, 34 Ala.

288; *Johnson v. Thwealt*, 18 Ala. 741; 3 Bland, 531–86; 1 Gill & J. 270; 1 Yerger, 360; 1 A. K. Mar. 165; 6 B. Mon. 67; Herman on Estoppel, 251, § 229; *Witter v. Dudley*, 42 Ala. 616.

STONE, J.—The answer to the bill in this case contains a plea of the statute of limitations of three years. It does not appear, either from the bill or answer, that the claim sued on was an open account. On the contrary, the claim was a fixed sum, no term of which was left open. Such claim is not an open account. This plea is bad, and was rightly disregarded.— *Winston v. Trustees*, 1 Ala. 124; *Caruthers v. Mardis*, 3 Ala. 599; *Brooks v. McFarland*, 20 Ala. 483; *Harrison v. Harrison*, 39 Ala. 489; *Mims v. Sturtevant*, 18 Ala. 358.

2. But neither the statute of limitations, nor staleness, was available to defendants in the present case. Mrs. Forsey, complainant, was all the time *non compos mentis*. No part of the claim was as much as twenty years old. None of the statutes had perfected a bar against her.—Rev. Code, § 2910.

3. One question discussed by the chancellor in his decree, we consider unnecessary to be decided in this case. We allude to his construction of section 1543 of the Revised Code. He ruled that, notwithstanding the deed of Forsey to Mrs. Boyd was executed and recorded on an insufficient probate, before January 17th, 1853, when the Code went into effect; yet, because Humphrey first, and Taylor after him, each purchased after that time, they fall under the influence of said section, and are chargeable with constructive notice, by reason of such registration. We prefer to announce no opinion on this question, as we consider its decision unnecessary. The annuity charged on the land, for the benefit of Mrs. Forsey, is clearly expressed in the deed, which conveyed to Mr. and Mrs. Boyd all the title they had. Humphrey bought from them, and Taylor from Humphrey. The said deed from Forsey to Boyd was a link, an indispensable link, in the chain of title to the land they purchased. In addition, the deed of Boyd and wife to Humphrey refers to the said deed of Forsey to Boyd and wife, and to the book in which it is recorded. This, independent of registration, was notice to both Humphrey and Taylor.—*Johnson v. Thweatt*, 18 Ala. 741; *Witter v. Dudley*, 42 Ala. 616; *Wilson v. Wall*, 34 Ala. 288.

Having premised this much, we think the decree of the chancellor shows a very careful and accurate consideration of the questions presented. With the exception of the one point, on which we prefer to remain uncommitted, we entirely

concur with him, and adopt his opinion as our own. The decree of the chancellor is affirmed.

BRICKELL, C. J., not sitting.